IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 3:07-00020 |
| | ) JUDGE HAYNES |
| SAMUEL DEWAYNE COPELAND, | ) ) |
| Defendant. | ) |

## MEMORANDUM

The United States filed this criminal action against the defendant, Samuel Dewayne Copeland, charging him as a convicted felon in possession of a firearm.

Before the Court are Copeland's motions to suppress (Docket Entry Nos. 19 and 20) to which the government has responded. (Docket Entry No. 25). In his motion, Copeland asserts that the weapon discovered on him after a stop of his vehicle and seizure of his person should be suppressed as the fruit of an illegal search in violation of his rights under the Fourth Amendment.

The Government's response contends that based upon a traffic violation, the initial stop of the Defendant was permissible and given the Defendant's conduct and the report of a recent shooting in the area, the officer's seizure and related search of the Defendant's person was justified. Once seized, the Defendant was given his Miranda[1] warning prior to further questioning and thereafter voluntarily answered the officer's questions admitting that he owned the weapon. An evidentiary hearing was held on the Defendant's motions.

For the reasons stated below, the Court concludes that the Defendant's motions should be

---

[1] Miranda v. Arizona, 384 U.S. 436, 478-79 (1966).

1

denied as the arresting officer had probable cause to stop the Defendant and reasonable suspicion to search the Defendant's person and seize his weapon. With a legitimate search and seizure, the Defendant's Miranda claim fails.

## A. FINDINGS OF FACT

On September 9, 2006, at approximately 12:30 a.m., a dispatcher with the Metropolitan Nashville Davidson County Police Department ("MPD") relayed a report of gunshots being fired in the area of North Seventh and Ramsey Streets, in Nashville. MPD's Officer Jamie King arrived in the area within a few minutes after this dispatch and observed a red Pontiac Grand Am run a stop sign. King stopped the vehicle a short distance from 500 Main Street. The driver, the Defendant, was the sole occupant of the vehicle.

At the time of stop, the Defendant remained in his vehicle and King approached the vehicle and requested license, registration, and insurance and upon King's questioning Defendant identified himself as Samuel Dewayne Copeland. King told the Defendant that he ran a stop sign. King observed the Defendant's hands to be visibly shaking as he handed over the insurance documents. King then asked the Defendant if there was anything illegal in the vehicle and initially, the Defendant did not respond. King then asked the Defendant if he had a gun inside the vehicle, and the Defendant then looked down at his waist area. King told Copeland of the dispatcher's report of shots fired in the area, and again asked the Defendant, if he had a gun in the vehicle. From King's observations, the Defendant's hands continued to shake and his voice trembled as the Defendant began to reach down to his waist area.

When the Defendant reached for his waist, King told the Defendant to keep his hands above his head and step out of the vehicle. The Defendant got out of his vehicle and raised his hands.

2

Another MPD officer, Daniel Schager, who was then present, observed a firearm protruding from the Defendant's pants' pocket and gave King the code 53, meaning a firearm. King seized the firearm that was loaded. The Defendant was arrested.

King read the Defendant his Miranda rights, after which the Defendant agreed to answer questions about the firearm. The Defendant identified the firearm as a Smith and Wesson weapon that he purchased for $150. The Defendant admitted the firearm was stolen and told the officers that the gun was loaded with hollow point ammunition. Despite providing this information, the Defendant declined the officer's request to sign the gun questionnaire reflecting his answers to the officers' questions. An investigation of the firearm revealed that the gun had been reported stolen to the MPD in June 2005.

The Defendant, who was on parole for murder at the time of this incident, was charged in state court with felony weapon possession, possession of a prohibited weapon, and theft of property. He also received a citation for running a stop sign. The Defendant was subsequently charged in this court with unlawful possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924.

In his motion to suppress (Docket Entry No. 25), the Defendant argues that King lacked a reasonable suspicion that Copeland fired the shots or unlawfully carried a gun because he lacked any description of the shooter and at least seven minutes elapsed since the report of the alleged shots and the officer's seizure of the Defendant. Thus, the defendant argues that officers used a traffic violation for an extended investigation and that a police officer is prohibited from conducting a pat-down search of a motorist during a traffic stop in such circumstances.

### B. CONCLUSIONS OF LAW

3

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Whren v. United States, 517 U.S. 806, 810 (1996). In U.S. v. Avery, 128 F.3d 974 (6th Cir. 1997), the Sixth Circuit explained the various basis for seizures:

> Typically, three levels of encounters between police and citizens are challenged in the courts: (1) the consensual encounter, which may be initiated without an objective level of suspicion, United States v. Travis, 62 F.3d 170 (6th Cir. 1995), cert. denied, 516 U.S. 1060, 116 S. Ct. 738, 133 L. Ed. 2d 688 (1996); (2) the investigative detention, which, if non-consensual, must be supported by a reasonable, articulable suspicion of criminal activity, Florida v. Royer, 460 U.S. 491, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983); United States v. Repress, 9 F.3d 483 (6th Cir. 1993); and (3) the arrest, valid only if supported by probable cause, Illinois v. Gates, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). <u>Investigative detentions and arrests are considered "seizures" and thus must be conducted consistent with the Fourth Amendment principles described above.</u>

Id. at 782. (emphasis added).

For a traffic stop, once the traffic stop is completed, the occupants of the vehicle must be allowed to leave absent a reasonable suspicion that the person is armed or dangerous, Knowles v. Iowa, 525 U.S. 113, 118 (1998) or "unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention." United States v. Mesa, 62 F.3d 159, 162 (6th Cir. 1995). In U.S. v. Sokolow, 490 U.S. 11 (1989), the Supreme Court stated:

> The reasonable-suspicion standard is a deviation of the probable-cause command, <u>applicable only to those brief detentions which fall short of being full-scale searches and seizures and which are necessitated by law enforcement exigencies such as the need to stop ongoing crimes, to prevent imminent crimes, and to protect law enforcement officers in highly charged situations.</u>

Id. at 12 (emphasis added). "[F]or a warrantless search to stand, law enforcement officers must be responding to an unanticipated exigency rather than simply creating the exigency themselves," United States v. Chambers, 395 F.3d 563, 566 (6th Cir. 2005) and must "dispel their suspicions

4

quickly." United States v. Avery, 137 F.3d 343, 349 (6th Cir. 1997).

For determinations of reasonable suspicion and probable cause, "[a] trial judge views the facts of a particular case in light of the distinctive features and events of the community; likewise, a police officer views the facts through the lens of his police experience and expertise." Ornelas v. United States, 517 U.S. 690, 699 (1996). In Ornelas, the Supreme Court recognized that:

> [D]eterminations of probable cause and reasonable suspicion involve a two-step process. First, a court must identify all of the relevant historical facts known to the officer at the time of the stop and search; and second, it must decide whether, under a standard of reasonableness, those facts would give rise to a reasonable suspicions justifying a stop or probable cause to search.

Id. at 699-700.

The relevant historical facts are a recent late night shooting in the vicinity where the Defendant was stopped. The Defendant was stopped several minutes after this report of shooting. By his own testimony at the evidentiary hearing, the Defendant admitted there were two stop signs on the street when King stopped him. The Defendant, however, testified that he stopped only at the stop sign when he saw the police officer's vehicle. The Defendant did not testify that he stopped at the earlier stop sign. This omission leads the Court to credit King's testimony that he stopped the Defendant's vehicle for a legitimate traffic violation. In these circumstances, King did not need specific facts tying the shooting to the Defendant.

For the second factor, the Supreme Court explained that "'reasonable suspicion' and 'probable cause' are 'common sense, nontechnical conceptions that deal with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" Ornelas, 517 U.S. at 702 (quoting Illinois v. Gates, 462 U.S. 213 (1983). In addition to the traffic violation, the Court finds that at the time of the traffic stop, there had been a recent late night

shooting in the area. During the legitimate traffic stop, King's observed the Defendant's reactions to King's questions of do you have a weapon *and* the Defendant's movement reaching at his waistband. Collectively, these facts justify King's directive for the Defendant to get out of the vehicle, to seize the Defendant and to search his person. When the Defendant stepped out of his vehicle and raised his arms, the weapon was either in plain view or was bulging from the defendant's waist.[2] Based upon the Defendant's earlier reaching for his waist area, as a matter of personal safety, King's search of the Defendant did not violate the Fourth Amendment. As a result, the Defendant's Miranda claim fails as the Defendant's statement to the officers were after receiving his Miranda rights and are not shown to be coercive. See United States v. Burton, 343 F.3d 514, 517, 519 (6th Cir. 2003).

For these reasons, the Defendant's motions to suppress should be denied.

An appropriate Order is filed herewith.

**ENTERED** this the 30th day of November, 2007

WILLIAM J. HAYNES, JR.
United States District Judge

---

[2]The Court notes the Government's notice (Docket Entry No. 34).

6

Case 3:07-cr-00020   Document 37   Filed 11/30/07   Page 6 of 6 PageID #: 75